Herbert F. LESSMANN and Mildred Lessmann, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Herbert F. LESSMANN, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 17384, 17385.

United States Court of Appeals Eighth Circuit.

Feb. 19, 1964.

Ennie McCall, Newton, Iowa, Brierly, McCall & Girdner, Newton, Iowa, for petitioners.

Norman H. Wolfe, Attorney, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division Dept. of Justice, aWshington, D. C., Lee A. Jackson, Harry Baum and J. Edward Shillingburg, Attorneys, Tax Division Dept. of Justice, Washington, D. C., for respondent.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

In the two cases here before us upon timely petitions for review, the Tax Court (opinion not reported) upheld the Commissioner's determination of income tax deficiencies, fraud penalties and certain other penalties. Case No. 17385 relates to individual tax returns filed by Herbert F. Lessmann for the fiscal years ending January 31, 1945, 1946, 1947, and 1948. Case No. 17384 covers joint returns filed by Herbert F. Lessmann and his wife Mildred covering the fiscal years ending January 31, 1949, 1952, 1953 and 1954.[1]

Herbert F. Lessmann, whom we shall refer to as taxpayer, conducted a business as sole proprietor under the name of Lessmann Manufacturing Company in Des Moines, Iowa. He invented, developed, manufactured and sold power loaders and has been so engaged for many years. He assembled the loader on an Oliver tractor, but since 1947 he has assembled the complete unit—tractor and loader. The employees in the business numbered from 16 to 30. Some of the loader units were sold direct to customers by the taxpayer and in such instances the list price was usually charged and collected. Other units were sold through distributors who were usually allowed a 22% commission which ordinarily was deducted from the purchase price. The taxpayer sold his business in December, 1952, for $259,200.

It would serve little purpose to set out in detail the vast volume of conflicting evidence contained in this record. Much of the pertinent evidence is set forth in the Tax Court's opinion. We have carefully examined and considered the record and will refer to some of the evidence during the course of this opinion.

1. The Tax Court and the Government counsel refer to the taxable years involved according to the year in which the taxable year ends. Thus the taxable year ending January 31, 1945, is called "fiscal year 1945" or "1945." The taxpayer classifies the year according to the bulk of the calendar year encompassed and thus refers to the taxable year ending January 31, 1945, as "1944". We shall in this opinion follow the plan adopted by the Tax Court for describing the years in controversy.

2. The Tax Court as to certain years in addition to the fraud penalty found penalties due under one or more of the following sections of I.R.C.1939, to wit, 294 (d) (1) (A), 294(d) (1) (B), and 294 (d) (2). No attack is made upon such penalties except to the extent they are affected by the attack on the tax deficiencies and the fraud penalties.

The Tax Court determined deficiencies in income and additions [2] to tax as follows:

"Deficiency Additions to tax.

| Fiscal Year | Income Tax | Section 293(b) 1939 Code |
|---|---|---|
| 1945 | $26,051.91 | $13,025.96 |
| 1946 | 30,254.51 | 15,127.26 |
| 1947 | 9,030.56 | 4,515.28 |
| 1948 | 3,780.26 | 4,694.61 |
| 1949 | 1,942.88 | 971.44 |
| 1952 | 6,873.85 | 3,436.93 |
| 1953 | 18,776.96 | 8,988.48 |
| 1954 | 2,882.10 | None" |

Taxpayer relies upon the following points for reversal:

I. The Government failed to meet its burden of proving by clear and convincing evidence that part of the deficiencies in each of the fiscal years 1945, 1946, 1947, 1948, 1949, 1952 and 1953, was due to fraud with intent to evade tax.

II. There is no substantial evidence to support the determination of a deficiency in income tax for the fiscal year 1954.

III. The Tax Court abused its discretion in denying taxpayer's motion for a continuance.

IV. The Tax Court erred in permitting the Government to audit the 1949 return which had been previously audited.

V. The Tax Court erred in ruling upon the admissibility of certain evidence.

### I.

Taxpayer insists the Government has failed to establish fraud by clear and convincing evidence. The issue of fraud on the part of the taxpayer is of importance in this case in two respects: 1. The returns for the fiscal years 1945 through 1949 and 1951 are barred by § 275 I.R.C.1939 unless fraud is shown as provided by § 276(a). 2. Under § 293 (b) I.R.C.1939, the 50% fraud penalty is imposed "If any part of any deficiency is due to fraud with intent to evade tax * * *."

It is clear that the burden is upon the Government to establish fraud both for the purpose of avoiding the bar of the statute of limitations and for justifying the imposition of fraud penalty with respect to each taxable year. § 1112 I.R.C. 1939; § 7454(a) I.R.C.1954; Kisting v. Commissioner, 8 Cir., 298 F.2d 264, 269; Klassie v. United States, 8 Cir., 289 F.2d 96, 99.

Courts have often stated that the Government must establish fraud by clear and convincing evidence. Klassie v. United States, supra; Gunn v. Commissioner, 8 Cir., 247 F.2d 359, 365; 10 Mertens, Law of Federal Income Taxation, § 55.16.

The question of whether a substantial understatement of income is due to fraud ordinarily presents an issue of fact. Fraud is never presumed. Fraud may be established by direct or circumstantial evidence. Taxpayer's failure to overcome the presumption of correctness of the Commissioner's determination of a tax deficiency will not, standing alone, support a finding of fraud. However, a consistent pattern of underreporting large amounts of income over a period of years is substantial evidence bearing upon an intent to defraud, particularly in situations where no satisfactory explanation for such understatement is forthcoming. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150; Klassie v. United States, supra; Schwarzkopf v. Commissioner, 3 Cir., 246 F.2d 731, 734; Owens v. United States, 8 Cir., 197 F.2d 450, 451.

The clearly erroneous standard applies to findings made by the Tax Court. Findings supported by substantial evidence on the record as a whole which are not against the clear weight of the evidence or induced by an erroneous view of the law will not be disturbed upon appeal. Probative evidence, direct as well as circumstantial, shall be considered in applying the clearly erroneous standard. Banks v. Commissioner, 8 Cir., 322 F.2d 530, 537, and cases there cited.

When the foregoing standards are applied to the facts in this case, it is apparent that the record contains clear and convincing evidence supporting the Tax Court's fraud findings. With respect to the unreported income, the Tax Court states:

"We have included in our findings of fact the schedule showing the increases in receipts as computed under the bank deposit and cash expenditures method. Petitioner's witness, a certified public accountant, expressed general agreement at the trial with the various items which appear in the respondent's computation and could find no fault with them. Nor does petitioner make any serious effort on brief to challenge the items that appear in the schedule. We find correct the additions to petitioner's gross income determined by respondent, with the concessions made at the trial and other adjustments as noted in our findings of fact."

Taxpayer was allowed the deductions claimed in his return except for some personal expenses such as wages for domestic help and personal utility bills which were disallowed. The court specifically found that taxpayer had offered insufficient evidence to support the claimed deductions disallowed and also found that the taxpayer had failed to prove that he was entitled to any deductions beyond those claimed in his return and those conceded by the Government.

Taxpayer has failed to overcome the presumption of correctness of the deficiency determination arising out of the subsantial understatements of income for the tax years. This standing alone would not establish fraud. Taxpayer admits that some substantial items of income were omitted in his tax returns but attempts to excuse himself upon the basis that he relied upon his bookkeeper, Mrs. Swindler, and the accountants who prepared his returns.

The resolution of the fraud issue depends largely upon credibility determinations. Taxpayer takes the position that Mrs. Swindler's testimony, which supports the fraud claim, is not worthy of belief. He also challenges some of his accountants' testimony. The taxpayer as a witness disclaimed any fraudulent intent. The court was not compelled to accept such statement at face value. Banks v. Commissioner, supra; Heil Beauty Supplies, Inc. v. Commissioner, 8 Cir., 199 F.2d 193, 195.

There is evidence that the taxpayer enjoyed a good reputation and that he was in no sense a gangster. While, as taxpayer states, quite a number of tax fraud cases involve gangsters, taxpayer's prior good reputation does not in and of itself conclusively negative fraud in this case. The fraud issue must be resolved upon the basis of the record as a whole.

There is evidence of failure by the taxpayer to report substantial specific items of income. His explanation of such omissions falls far short of being convincing.

The taxpayer's books for years prior to fiscal year 1952 were wholly inadequate. They consisted largely of a check register which was used for determining deductible expenses. A file of sales invoices was maintained but some of these were withdrawn by the taxpayer. A number of machine unit sales were not reported as income. Commissions were deducted or units sold direct upon which no commission was allowed or paid. Substantial sales of repair parts were omitted from income in 1945, 1946 and 1947.

Mrs. Swindler's testimony, which is controverted by the taxpayer, is that the taxpayer told her which checks representing the proceeds of sales were to be deposited. Cashier's checks and bank drafts aggregating some $175,000 were purchased during the various years involved with unreported business receipts. Such checks are listed by year in the Tax Court's opinion.

Taxpayer's attempt to shift the responsibility for omissions to the accountants preparing his returns is not persuasive. The only information as to receipts given the accountants was summaries and

other information furnished by the taxpayer. The accountants did not audit the receipts and so stated in the tax returns. They frequently complained about the inadequacy of the taxpayer's records.

Taxpayer makes some contention that his records were destroyed by flood and by mice. The premises were flooded in 1946. Mrs. Swindler's testimony is that there was no substantial loss of material records. The taxpayer at the trial produced some records not previously disclosed. In any event, inadequacy of taxpayer's records cannot be attributed to the flood damage, as taxpayer at no time had adequate records for the earlier tax years.

No deficiency was claimed or found for the fiscal years 1950 or 1951 because of substantial losses in such years. The Commissioner and the Tax Court found that during such years taxpayer followed the same pattern as in other years and that while no tax resulted in 1950 or 1951, the taxpayer used inflated losses claimed in such years as a basis for deductions for 1952 and 1953. The Commissioner and the Tax Court redetermined net losses for such years and thus adjusted the loss carry-over. Among other things, the Tax Court in its opinion observes:

"Petitioner impressed the Court as an intelligent businessman who was well aware of the extent of his machinery sales and that he was not reporting all of his sales by a wide margin. There was testimony from his bookkeeper to the effect that petitioner would select which checks from customers to deposit and which to hold back, and there was further evidence that petitioner instructed his bookkeeper to falsely show purported commissions paid on certain sales. This and other evidence is highly convincing that petitioner knew of his unreported sales. * * * *"

Our examination of the record satisfies us that the Tax Court has by its opinion satisfactorily demonstrated that clear and convincing evidence supports its determination that part of the deficiency in tax is due to fraud with intent to avoid tax with respect to each of the years in which the court upheld the fraud penalty.

II.

For the fiscal year 1954 the Tax Court found a deficiency in income but found no fraud. The taxpayer's claim is that he has not been given the credit to which he is entitled for a loss carry-over from prior years and that the Government in making recomputations for the loss years failed to give him credit for deductible expenses for such years. As previously pointed out, the Tax Court found that deductions were allowed with respect to all taxable years as claimed by taxpayer except some relating to personal expenses and that taxpayer failed to prove that he was entitled to any deductions in excess of those claimed in his return and those conceded by the Commissioner.

Upon the issue of the tax deficiency for 1954, the presumption of correctness which attaches to the Commissioner's deficiency determination operates. Banks v. Commissioner, supra.

Taxpayer has not demonstrated that the Tax Court's resolution of this issue is clearly erroneous.

III.

The Tax Court did not abuse its discretion in denying taxpayer's motion for a continuance. The motion is based upon newly acquired counsel without adequate time for preparation and upon the unavailability of the witness Harrigan. The petitions conferring jurisdiction upon the Tax Court in these cases were filed on April 20, 1959. The cases were set for trial on March 21, 1960. Upon taxpayer's motion, a continuance was granted. The cases were then set for trial on October 24, 1960. On that date, after the Government appeared with witnesses ready for trial, a continuance was granted upon taxpayer's motion over the Govern-

ment's objection. On November 22, 1961, notice of trial on February 26, 1962, was given the taxpayer. On December 8, 1961, taxpayer's then attorneys, James M. Stewart and Alex M. Miller, filed motion to withdraw, which motion shows that such withdrawal was with the approval of the taxpayer, and that the taxpayer had stand-by counsel. The motion was granted and the taxpayer was advised of the withdrawal of his attorneys' appearance. At the call of the calendar on February 26, 1962, taxpayer appeared in person and orally requested a continuance upon the ground that his attorney Williams needed time to study the case. The motion was overruled. On March 5, 1962, taxpayer's present attorney, McCall, who had just been retained as counsel, filed a motion for a continuance to obtain time to prepare for trial. The Government resisted the motion upon the basis of the prior continuances; further urging that it again had witnesses present from a distance ready for trial. The motion for continuance was overruled.

■ Motions for continuances are addressed to the sound discretion of the court and rulings upon such motions are reversible only upon showing abuse of discretion. Janousek v. French, 8 Cir., 287 F.2d 616, 623; Glawe v. Rulon, 8 Cir., 284 F.2d 495, 498.

■ Inasmuch as this case had been pending for more than two years and two continuances had been previously granted at taxpayer's request, and it affirmatively appears that taxpayer had ample notice of trial and that he at least acquiesced in the withdrawal of his former counsel, we cannot say that the court abused its discretion in refusing the continuance. The denial of a continuance under somewhat similar circumstances was upheld in Woodbury v. Commissioner, 3 Cir., 231 F.2d 121.

Parenthetically, we observe that we are aware of the great difficulty encountered by present counsel in going into the trial of this complicated case without time for preparation. However, upon the record, the responsibility for this predicament lies with the taxpayer.

The absence of the witness Harrigan does not compel a continuance. The statement of Harrigan's doctor, which is not disputed, shows that Harrigan was suffering from an advanced case of lung cancer, that he was unable to appear in court, and that there is no likelihood that he would be able to testify later. Harrigan subsequently died. Moreover, Harrigan's deposition had been taken previously by stipulation in the presence of counsel for both parties with full opportunity to question him.

IV.

■ Some tax audit of the taxpayer's records had been made previously for the year 1949 which resulted in a minor adjustment. Taxpayer urges that by reason thereof the Government is barred by § 7605(b) I.R.C.1954 from again inspecting the taxpayer's books for such year. Said statute does provide "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." The short answer to this contention is that the issue now raised was not urged in the Tax Court. Thus the Government was not given an opportunity to meet this issue and the Tax Court was not given an opportunity to pass on it. The provisions of this section may be waived by taxpayer's failure to object to a second examination. United States v. O'Connor, 2 Cir., 237 F.2d 466, 476. Moreover, Agent Lodden testified that he received permission from the Commissioner to make the re-audit for 1949, and that notice was given to taxpayer.

V.

■ Taxpayer complains that the Tax Court improperly received certain evidence over his objection. We have frequently held that in a case tried to a judge, "it is virtually impossible for a trial judge to commit reversible error by

receiving incompetent evidence." Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377, 379; Pritchard v. Downie, 8 Cir., 226 F.2d 323; American Universal Ins. Co. v. Dykhouse, 8 Cir., 326 F.2d 694. In Builders Steel Co., we said:

> "An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." 179 F. 2d 377, 379.

■ Upon the basis of the standards just stated, taxpayer has failed to demonstrate that prejudicial error was committed in admitting the evidence. None of the evidence against which complaint is lodged appears to have had any decisive bearing upon the Tax Court's findings.

Taxpayer also urges that the court erred in rejecting his profert of the audit report made with respect to a previous examination of taxpayer's 1949 return. The Government's objection to such offer, upon the ground that the exhibit is immaterial, was sustained. Taxpayer's counsel stated that the exhibit was offered to show that the Government at an earlier time had examined and approved the 1949 return. The record shows the following colloquy:

> "Mr. McCall: It would show at one time. Your Honor, at a time much earlier than this, and much earlier than this audit, the Government did approve of the tax return of the taxpayer.
>
> "The Court: Is the Government estopped by that?
>
> "Mr. McCall: I think that it has weight as evidence that at one time, at least, some member of the Government at a time when perhaps records were much more available——
>
> "The Court: Oh, we are not going to try that case. The objection is sustained."

It is noted that the offer was not for the purpose of establishing that a prior audit of the taxpayer's 1949 return had been made. The prior audit does not preclude additional claims for deficiency against the taxpayer. The prior audit did not cover the unreported income field covered by the later audit. It is obvious from the Tax Court's remarks that it would not have been impressed by the prior audit if it had been received in evidence.

We have carefully examined the entire record and have given full consideration to all errors asserted by the taxpayer. We conclude that the taxpayer has had a fair trial and that no prejudicial errors were committed by the Tax Court.

The judgment is affirmed.