Christine M. GRUNEWALD, individually and as Executrix of the Will of Henry W. Grunewald, Deceased, Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Missouri Corporation, Appellee.

No. 17518.

United States Court of Appeals Eighth Circuit.

May 22, 1964.

Francis C. Pilkerton, Hyattsville, Md., Oliver C. Sard, Hyattsville, Md., and Lloyd L. Schainker, St. Louis, Mo., for appellant.

Robert W. Yost, St. Louis, Mo., M. M. Hennelly, St. Louis, Mo., for appellee.

Before VOGEL, MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

The district court dismissed this diversity action with prejudice for failure to prosecute. The question before us is whether that dismissal constituted an abuse of the court's discretion.

The plaintiff-appellant, acting individually and as executrix of the will of Henry W. Grunewald, her deceased husband, joined with the sole legatee and the executors of the will of Owen Brewster, deceased, a former United States Senator from the State of Maine, in a complaint, filed February 23, 1962, seeking a determination of their rights in 536 pre-re-

organization general mortgage bonds of Missouri Pacific Railroad Company, and in income bonds successor thereto, claimed to have been the property of the decedent Grunewald. The complaint alleged that "In or about 1940" the original bonds "were destroyed by burning". The railroad's answer, pleading, among other things, laches and the termination of the designated period during which the exchange of securities in the reorganization could have been effected, was filed on April 6. The case was therefore at issue from and after that date. It was originally set for trial September 10, 1962. According to the bare docket entries four continuances were successively effected:

1. On July 26 the defendant moved for a new trial date. The plaintiffs' then counsel, a Missouri firm, filed an affidavit in opposition. The case was reset for December 17.

2. On November 30, "by agreement", the case was reset for March 4, 1963.

3. On February 8, 1963, on the "Court's own motion", the case was reset for July 8.

4. On July 8, by "leave and consent", the case was reset for September 4.

The dismissal was on September 4, 1963, after motion by the defendant.

The docket entries also disclose that by June 1962 interrogatories by the defendant and answers by the plaintiffs had been served and filed; that on February 8, 1963, the plaintiffs' then counsel presented a stipulation for dismissal without prejudice on behalf of the plaintiffs other than the present appellant; that the action was so dismissed as to those plaintiffs; that with leave of court counsel then withdrew as attorneys for the appellant; and that formal notice of this withdrawal was mailed on the same day by the clerk to the appellant. It was on this occasion that the court on its "own motion" reset the case for trial on July 8. The clerk's letter to the plaintiff-appellant at that time stated that this continuance was "to enable you to secure representation".

The district court file contains the following correspondence:

1. A letter dated April 8, 1963, from the clerk to James C. Toomey, an attorney of Washington, D. C., who theretofore had twice advised the clerk that "This office represents a claim against the estate" of Henry W. Grunewald. This letter informed Mr. Toomey of the caption of the case as revised after the dismissal by the other plaintiffs, of the withdrawal of appellant's Missouri counsel, of the resetting for July 8, of the giving of advice as to this to the appellant herself on February 8, and of the lack of any new appearance for the appellant up to that time.

2. A letter dated June 13, 1963, from the plaintiff to the court. This recited the death in February of a daughter, the burden of her estate and of the care of the daughter's three minor orphaned children, illness of the plaintiff, her inability to be ready for trial on July 8, illness of "several necessary witnesses", inability to engage any new attorney, and her "request that this case be continued for ninety days".

3. The court's response, dated June 18, to the plaintiff. This outlined the prior continuances and said

"In view of these facts and circumstances, I do not feel that I can pass the case beyond the time it is set, since either party is entitled to be heard, and the defendant has indicated that it wanted to be heard and dispose of the case."

4. A letter dated June 26 from the plaintiff to the court. In it she asked again "for a postponement of ninety or sixty days". She stated that the earlier continuances were not made upon any request from her and she outlined in some detail the personal difficulties which had beset her in connection with her daughter's death.

5. A letter dated July 5 from James C. Toomey to the clerk. This recited that the plaintiff had come to his office the day before; that he was informed of the setting of July 8 and of the plaintiff's request for a further continuance; that

Maryland litigation concerning her grandchild's custody had just been terminated; and that

"Contingent on the granting of a further continuance I have been retained to represent Christine M. Grunewald, both individually and as the executrix of the will of Henry W. Grunewald, deceased in the above referred to litigation. I intend to associate with myself a member of the Bar of the State of Missouri and will be prepared to proceed with the litigation at any time set by the Court after August 8, 1963."

He asked for a continuance.

6. A letter dated July 8 from the court to the plaintiff. This read as follows:

"In view of your letter of June 26th, I have this morning reset the above case for Wednesday, September 4, 1963.

"This case has been here for a long time and I will at that time expect to dispose of it."

7. A letter dated July 8 from the clerk to Mr. Toomey advising him of the resetting for September 4 and enclosing a form for the designation of local counsel.

8. A letter dated July 10 from the clerk to the plaintiff advising her of the resetting for September 4.

9. A letter dated August 31 from Mr. Toomey to the clerk reciting,

"I am unable to represent these parties in this matter. I respectfully request that my name be withdrawn from the case."

This was received by the clerk on September 3, the day before the trial date.

10. A telegram dated September 3 from Francis C. Pilkerton, a Maryland attorney, to the clerk, stating that counsel for the plaintiff had withdrawn on August 29, that he, Pilkerton, had been asked "on this last working day before trial" to represent her, and that he requested a continuance.

On September 4, at the call, the defendant appeared by counsel and announced that it was ready. No one appeared for the plaintiff. Counsel for the defendant stated that the preparation of the case for trial had been expensive; that they would not agree to any further continuance; and that they asked the court to dismiss the case with prejudice so as to preclude its reinstitution elsewhere at additional expense to the defendant. The court reviewed the history of the case, treated Mr. Pilkerton's telegram as a motion for continuance, denied that motion, and dismissed the case for failure to prosecute.

The plaintiff argues that not one of the four continuances was requested by her alone; that the intervening Labor Day weekend delayed the court's receipt of notice of the Toomey withdrawal until September 3; that under the local rules of some courts, both federal and state, an attorney is not allowed to withdraw except by leave of court after notice; and that "it is shocking" if the situation is otherwise in the Eastern District of Missouri and "an attorney can irresponsibly dart in and out of a case, without some safeguard". Finch v. Wallberg Dredging Co., 76 Idaho 246, 281 P.2d 136, 48 A.L.R.2d 1150 (1955), and Griffin v. Russell, 161 Ky. 471, 170 S.W. 1192 (1914), are cited in support of the plaintiff's position that the denial of the continuance was an abuse of discretion.

It is well settled, of course, that a federal court has inherent power to dismiss a civil case for want of prosecution. Rule 41(b), F.R.Civ.P.; Link v. Wabash R. Co., 370 U.S. 626, 629–633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Janousek v. French, 287 F.2d 616, 620 (8 Cir. 1961); Janousek v. Wells, 303 F.2d 118, 122 (8 Cir. 1962); Newport v. Revyuk, 303 F.2d 23, 28 (8 Cir. 1962). Dismissal for this reason is then a matter of discretion. On appeal the applicable standard is that of the presence or absence of abuse. The Supreme Court said, in Link, supra, p. 633 of 370 U.S., p. 1390 of 82 S.Ct.,

"Whether such an order can stand on appeal depends not on power but on

whether it was within the permissible range of the court's discretion."

Duisberg v. Markham, 149 F.2d 812 (3 Cir. 1945), cert. denied 326 U.S. 759, 66 S.Ct. 98, 90 L.Ed. 456.

It is equally well settled, and plaintiff's counsel in his brief concedes, that in a civil case an attorney's withdrawal does not give his client an absolute right to a continuance. This, too, is a matter for the court's discretion. 48 A.L.R.2d 1155, 1157–1158, and cases cited; Harms v. Simkin, 322 S.W.2d 930, 933 (Mo.App.1959). Here again, a trial court's refusal to grant a continuance will not be disturbed on appeal unless abuse of discretion is demonstrated. Lessmann v. Commissioner, 327 F.2d 990, 996 (8 Cir. 1964); McDonnell v. Tabah, 297 F.2d 731, 733 (2 Cir. 1961); Girard Trust Co. v. Amsterdam, 128 F.2d 376, 377 (5 Cir. 1942); Merritt-Chapman & Scott Corp. v. Kent, 309 F.2d 891 (6 Cir. 1962), petition for certiorari dismissed 372 U.S. 982, 83 S.Ct. 1118, 10 L.Ed.2d 197. See Rhodes v. Houston, 202 F.Supp. 624, 631 (D.Neb.1962), aff'd 309 F.2d 959 (8 Cir.), cert. denied 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719.

It is of interest to note that the Missouri courts enunciate the same principles and state specifically that "every intendment is in favor of the court's ruling". Savings Fin. Corp. v. Blair, 280 S.W.2d 675, 678 (Mo.App.1955); Blair v. Chicago & A. Ry. Co., 89 Mo. 383, 395, 1 S.W. 350, 354 (1886); Carr v. Carr, 308 S.W.2d 357, 359 (Mo.App.1957); Harms v. Simkin, supra, p. 933 of 322 S.W.2d. See State v. Mimms, 349 S.W. 2d 925, 927 (Mo.Sup.1961).

All this means, of course, that each case is to be viewed in the light of its particular facts. In Janousek v. French, supra, p. 621 of 287 F.2d, Judge Matthes, speaking for this court, observed that "The determination of what constitutes an abuse of discretion is not always an easy task." In Bowles v. Goebel, 151 F.2d 671, 674 (8 Cir. 1945), we said:

"Discretion in a legal sense necessarily is the responsible exercise of official conscience on all the facts of a particular situation in the light of the purpose for which the power exists. * * * And the process of an appellate court in examining exercised discretion for abuse is not one of creating prescriptions and definitions for the curbing of judgment generally, but simply one of viewing the action taken in an immediate case in the relativeness of its entire situation to see whether it compels the conviction that there has been a responsible exercise in a legal sense of official conscience on all the considerations involved in the situation."

The cited annotation at 48 A.L.R.2d 1155 concerns withdrawal or discharge of counsel in a civil case as ground for continuance. It observes, 48 A.L.R.2d p. 1159, that

" * * * the cases in which the refusal of continuance was held justified outnumber, by a ratio of three to one, the cases in which the refusal of continuances was held arbitrary—a clear indication of the fact that the exercise of discretion by the trial court will be disturbed only in extreme cases in which it clearly appears that the moving party was free of negligence."

We turn back to the facts and the chronology of this case. One, of course, can say, as the plaintiff does, that she has not had her day in court; that, while there were no less than four continuances, at least the docket entries indicate that these were not made upon her sole request or granted over opposition; that the plaintiff has had misfortune in her family; that her last and non-local attorney withdrew on the eve of trial and without leave of court; and that she and her new counsel should not be penalized for all this.

The standard we must apply, however, as indicated above, is not what we as individual judges might have done under the circumstances, but whether the dis-

trict court's action was an abuse of its discretion. We cannot so conclude.

■ The case was at issue for seventeen months before it was dismissed. In February 1963 when original counsel for the plaintiffs withdrew, the appellant was promptly notified and the court reset the case five months ahead and later further continued it for two months more. Plaintiff was thus on definite notice and possessed of a total of seven months in which to engage new counsel and to prepare for trial. Mr. Toomey, whether as attorney, friend, sympathizer, or general advisor of the plaintiff, was aware by early April 1963 of the withdrawal of the Missouri counsel, of the resetting to July 8, and of the continuing lack of an appearance on behalf of the plaintiff. The plaintiff herself in mid-June asked for a continuance of ninety days and two weeks later for one of ninety or of only sixty days. The court granted her fifty-seven days from July 8 by the resetting to September 4. No word was forthcoming from the plaintiff or from anyone on her behalf from July 8 until the day before the scheduled trial. No local counsel put in an appearance. Despite the wording of the docket entries, it is clearly evident from the correspondence that the continuance on February 8 was one for the plaintiff's benefit and the one made on July 8 was upon her insistent and repeated request. There is no showing that the Toomey withdrawal (assuming, in the first place, that he had made an appearance) was without prior notice to the plaintiff or was without her consent or fault. There was no request to the district court for relief under Rule 60(b), F.R.Civ.P. See, as to this, Link v. Wabash R. Co., supra, p. 632 of 370 U. S., 82 S.Ct. 1386. The intimation that the court itself is partially to blame because Toomey's withdrawal was without leave evokes no response in us; the rec-

ord does not disclose that he was a member of the trial court's bar or otherwise subject to its control. See Gray v. Joseph J. Brunetti Constr. Co., 266 F.2d 809, 817 (3 Cir. 1959), cert. denied 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69.

This case was set five times for trial and a sixth date was requested. It has been observed that

" * * * the unexplained withdrawal, on the eve of trial, of the attorney for one of the parties to an action, as was the case here, affords no compelling ground for an application for a continuance, as, if the contrary rule should prevail, all a party desiring a continuance under such circumstances would have to do would be to discharge his counsel or induce him to file a notice of withdrawal. This is not a situation such as would be presented in the event of the sudden illness of counsel, or where an attorney would apply to the court for leave to withdraw and for good cause shown be by the court granted such permission. We have here nothing but the mere fact of the withdrawal on the part of counsel, and it cannot be held that such a situation entitled appellant to a continuance of the action." Peterson v. Crockett, 158 Wash. 631, 291 P. 721, 722–723 (1930).

When we consider, as did the Supreme Court in Link, supra, pp. 633–636 of 370 U.S., p. 1390 of 82 S.Ct., the "drawn-out history of the litigation" in its entirety, we cannot say that the dismissal with prejudice was an abuse of discretion subject to reversal here. Although Link is a decision by a sharply divided court, the policy it expresses and our own approach to this kind of problem, as revealed by Janousek v. French, supra, 287 F.2d 616, are controlling here.

Affirmed.