**UNITED STATES of America, Plaintiff,**

v.

**John T. CAMPOLA, Defendant.**

**No. 82–CR–36.**

United States District Court,
N.D. New York.

Aug. 23, 1982.

Gustave J. Dibianco, U.S. Atty., Albany, N.Y., for plaintiff; George A. Yanthis, Asst. U.S. Atty., Albany, N.Y., of counsel.

Stanley F. Krysa, Chief, Criminal Section—Tax Division, U.S. Dept. of Justice, Washington, D.C., Rogers, Meisel & August, Palm Beach, Fla., for defendant; David S. Meisel, Palm Beach, Fla., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

Defendant John T. Campola is charged with six counts of evasion of income and corporate taxes in violation of the provisions of 26 U.S.C. §§ 7201, 7206(1) and 7206(2). Before the Court are defendant's motion, pursuant to Fed.R.Cr.P. 41(f),[1] to suppress evidence obtained during an allegedly unlawful inspection of his financial records and the Government's motion, pursuant to Fed.R.Cr.P. 16(b), for an order granting reciprocal discovery.

---

1. The question of the lawfulness of this tax audit has previously been raised in this Court. In a Memorandum-Decision and Order, defendant's pre-indictment motion to suppress any evidence obtained during the tax audit was denied because of his failure "to make a clear showing of an unlawful search or seizure or of irreparable harm." *In the Matter of the Application of John Campola and J.C. Metal Spinning, Inc. for the Suppression of Evidence,* Misc. 669 (N.D.N.Y. Apr. 23, 1982).

## II

It is uncontroverted that Internal Revenue Service Agent David J. Prystal was conducting an audit to determine the tax liabilities of John Campola and his wife, Jean, for the year ending December 31, 1975.[2] During his investigation, Agent Prystal inspected defendant's financial records in the possession of Robert Schwartz, a certified public accountant holding a power of attorney from the defendant with respect to defendant's 1975 1040 tax matters. On December 8, 1977, Agent Prystal mailed a report of individual income tax changes to defendant accompanied by a letter advising defendant and his wife "that they had 15 days from the date of the letter (12–8–77) in which to either consent to the proposed assessment, submit additional evidence or information, request a conference with an examination to discuss the findings or request a conference with a member of the conference staff."[3] On January 11, 1978, Agent Prystal wrote to defendant, advising him that because no response had been received to the previous letter, the Service would be compelled to process the case on the basis of its proposed adjustments unless defendant replied within ten days.[4] Receiving no reply, Agent Prystal processed the case as "unagreed" and sent it to his group office for review. On February 21, 1978, the review staff advised Agent Prystal to make further inquiry into defendant's claimed business use of a yacht on which a depreciation allowance had been claimed. Accordingly, Agent Prystal requested additional information from CPA Schwartz which was provided on March 9, 1978, when Schwartz appeared at the IRS office in Kingston, N.Y. and submitted "invoices-receipts"[5] for a forty-five foot Chris Craft boat. On May 26, 1978, the examination of defendant's tax liability for the year ending December 31, 1976 was assigned to Revenue Agent James P. Long. In an affidavit in support of his motion to suppress, defendant alleges that Agent Long may have obtained several additional private financial records concerning his 1975 tax liability from CPA Schwartz.

## III

Defendant contends that the IRS engaged in an unlawful secondary examination of his financial records by failing to provide him with the written notice required by the provisions of 26 U.S.C. § 7605(b).[6] Apparently, defendant objects to Agent Prystal's request for and examination of records pertaining to defendant's yacht, as well as to alleged requests by Agent Long for unidentified financial records provided by CPA Schwartz concerning defendant's tax liability for 1975.

It is the Government's position that the inspection of defendant's financial records was "continuous" and that there was, therefore, no "second look." Alternatively, the Government maintains that any second look at defendant's records was accomplished with the voluntary cooperation of CPA Schwartz in his capacity as defendant's agent, and therefore was not unlawful. In any event, the Government contends that suppression of evidence is not mandated by the provisions of 26 U.S.C. § 7605(b) and would be an inappropriate remedy for this Court to utilize.

---

2. Although defendant's tax liability for the years 1976 and 1977 were also being reviewed, defendant's present motion is concerned primarily with evidence reflecting on his 1975 tax liability.

3. Affidavit of David J. Prystal, p. 2 (Government's Memorandum of Law in Opposition to Suppression Motion of Defendant, Exhibit "B").

4. A similar notice was sent to defendant at his corporate address to ensure receipt of the proposed adjustments.

5. Affidavit of David J. Prystal, *supra*, p. 2.

6. 26 U.S.C. § 7605(b) Restrictions on examination of taxpayer:

   No taxpayer shall be subject to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

IV

It is well settled that "§ 7605(b) notice is not required so long as the summoned information is sought as part of an ongoing investigation." *Application of SJC Manufacturing Corp.*, 479 F.Supp. 647, 650 (E.D.N.Y.1979). In support of its contention that the instant investigation was, in fact, an ongoing investigation, the Government relies in part on the fact that Agent Prystal's determination of defendant's tax liability was submitted to a review staff for further consideration. It is clear, however, that the availability of review procedures alone is not sufficient to characterize an examination as ongoing. *United States v. Garrison Construction, Inc.*, 72–2 USTC ¶ 9618 (S.D.N.Y.1972).[7] To do so would defeat the legislative purpose in enacting § 7605(b) as a curb on the investigative powers of low-echelon revenue officers. *See United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Accordingly, this Court finds that Agent Prystal's examination of the "invoices-receipts" concerning defendant's yacht and Agent Long's alleged examination of defendant's records do not fall within the continuous examination exception to the written notice requirement of § 7605(b). cf. *United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978); *Belasick v. Dannen*, 542 F.2d 41 (7th Cir.1976).

However, it is clear that the right to written notice before a second examination of a taxpayer's records can be waived if the taxpayer consents to the reexamination. *United States v. Baker*, 451 F.2d 352 (6th Cir.1971); *Lessmann v. C.I.R.*, 327 F.2d 990 (8th Cir.1964); *United States v. O'Connor*, 237 F.2d 466 (2d Cir.1956). In the instant case, it does not appear that defendant personally consented to any reexamination of his records by revenue agents. The question remains, however, whether CPA Schwartz's consent to a reexamination of defendant's financial records is binding on defendant taxpayer as the government contends. Defendant maintains that "to the best of my knowledge and recollection, I did not authorize Mr. Schwartz to permit such a second examination of my private records nor am I aware of any consent to such second examination being given by him." (Affidavit of John T. Campola in support of motion to suppress, ¶ 6). Defendant did, however, execute a power of attorney [8] to CPA Schwartz to "represent" defendant before the IRS with respect to matters involving defendant's 1040 tax return for the year 1975. This Court believes that the authority to provide documents to the IRS during an examination of defendant's records was within the authority contained in the executed power of attorney.[9]

"It is the general rule that a power of attorney must be strictly construed and strictly pursued." 3 Am.Jur.2d, Agency § 29 (1964). However, "[t]he rule of strict construction of a power of attorney is not absolute and should not be applied to the extent of destroying the very purpose of the power.... Furthermore, the instrument should always be deemed to grant such powers as are essential or usual in effectuating the expressed powers." *Id.* at § 30.

Mindful of the foregoing, this Court believes that the authority to "represent" includes the necessary and usual authority to provide revenue agents with relevant documents during an examination of the tax-

---

**7.** Moreover, to permit the IRS to define, for itself, when an examination is closed would render the § 7605(b) notice requirement meaningless. *United States v. Fordin*, 72–2 U.S.T.C. ¶ 9618 (S.D.N.Y.1972).

**8.** Exhibit "A", Government's Memorandum of Law in Opposition to Suppression Motion of Defendant.

**9.** The form contained four additional enumerated powers not relevant here. The Government contends that the enumerated authority "to execute waivers (including offers of waivers) of restrictions on assessment or collection of deficiencies in tax and waivers of notice of disallowance of a claim for credit or refund" authorized CPA Schwartz to waive defendant's right to a preexamination notice as provided for in § 7605(b). This question need not be decided in light of the Court's disposition of the instant motion.

payer's financial records. Therefore, it was not necessary for defendant to be provided with a written notice prior to any reexamination of his records by Agents Prystal or Long, and defendant cannot now complain that he did not personally consent to a reexamination of his financial records.

Accordingly, defendant's motion, pursuant to Fed.R.Cr.P. 41(f), is denied and the Government's motion for reciprocal discovery, pursuant to Fed.R.Cr.P. 16(b)(1), is granted.

It is so Ordered.