GEORGE JOSEPH OLIVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oliver v. Commissioner
Docket No. 381-90
United States Tax Court
T.C. Memo 1993-508; 1993 Tax Ct. Memo LEXIS 520; 66 T.C.M. (CCH) 1192; November 3, 1993, Filed *520 Decision will be entered under Rule 155. For petitioner: Michael Louis Minns and Helena C. Papadopoulos. For respondent: Abbey B. Garber. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: This case was submitted to the Court on the stipulations of the parties. [1] Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
[2]Section Section Year
Deficiency
6653(b)
6653(b)(1)
1980
$ 6,154
$ 3,077
$ -- 1981
5,569
2,785
-- 1983
2,316
-- 1,158
1984
21,487
-- 10,744
1985
24,894
-- 12,447
1986
29,327
-- -- Additions to Tax
Section Section Section Section
Year
6653(b)(1)(A)
6653(b)(2)
6653(b)(1)(B)
6654 1980
$ -- --  --  $ 392
1981
-- --  --  427
1983
-- *  --  142
1984
-- *  --  1,351
1985
-- *  --  1,427
1986
21,995
--  *  1,419
*521 As an alternative to the additions to tax for fraud for each of the years at issue, respondent determined that petitioner is *522 liable for the additions to tax for failure to file and for negligence under sections 6651(a) and 6653(a), respectively, for each such year. The issues for decision are: (1) Is petitioner liable for the additions to tax for fraud for each of the years at issue? We hold that he is. [3]
(2) Is petitioner liable for the addition to tax for failure to pay estimated tax for each of the years at issue? We hold that he is. FINDINGS OF FACT The facts that have been stipulated are so found. Petitioner, George Joseph Oliver, was a resident of Florissant, Missouri, at the time of the filing of the petition herein. Petitioner and Delores Oliver (Ms. Oliver) were married in June 1956. They permanently separated in July 1984 and were granted a divorce in November 1986. The divorce became final in December 1987. Petitioner earned *523 three years of college credit towards a mechanical engineering degree and worked as an engineer for at least 10 years. Petitioner owned and managed various rental homes during the years at issue. Petitioner and Ms. Oliver filed a joint Federal income tax return for each of the years 1965 through 1979. Their returns were audited for the years 1973, 1974, 1976, 1977, and 1979. Prior to the mailing of the notices of deficiency dated October 30, 1989, petitioner had not filed Federal income tax returns for any of the years 1980 through 1986. Thereafter, on February 6, 1991, well after the petition was filed in this case, petitioner sent signed copies, dated on different days in January 1991, of individual Federal income tax returns for each of the years 1980 through 1989 (January 1991 returns) to respondent's Office of District Counsel in Dallas, Texas. The January 1991 returns for the years at issue (namely, 1980, 1981, and 1983 through 1986) show that petitioner had significant amounts of gross income and taxable income and that petitioner had an income tax liability for each of those years. Petitioner had income tax withheld for each of the years 1965 through 1979. Starting *524 with the year 1980, petitioner filed Forms W-4 with his employers on which he claimed that he was exempt from having income tax withheld for each of the years at issue. For each of those years, no tax was withheld for petitioner, and petitioner made no estimated tax payments. Between 1979 and 1983, petitioner told various people, including a special agent with the Internal Revenue Service (Service) Criminal Investigation Division, that he was not going to pay any taxes because taxes were unconstitutional. Petitioner donated money to, and purchased literature from, Belanco, a tax protest organization which advocated noncompliance with the income tax laws. In August 1987, petitioner was tried in the United States District Court for the Northern District of Texas on two counts of willful failure to file a return under section 7203 for each of the years 1980 and 1981. He was acquitted by a jury. The parties stipulated that, for the years 1980 through 1986, petitioner and/or Ms. Oliver had the following income, expenses, and losses: [4]
1980
1981
1982 1983
Wages of
petitioner $ 43,568
$ 25,596 $ -- $ 5,449  Interest income
of petitioner and Ms. Oliver 234
183 -- 14 Unemployment
compensation of petitioner -- 3,264 3,874
-- Schedule C net income
of petitioner -- 14,150 -- -- Schedule C net income
of Ms. Oliver -- --  -- 589 Short-term capital
gain of petitioner and Ms. Oliver -- --  -- 4,353 Long-term capital
gain of petitioner and Ms. Oliver -- --  -- 33,852
Net rental income
(loss) of petitioner and Ms. Oliver 879
(1,810)
2,684
(3,851)
Earned retirement
income of petitioner -- --  -- -- Net employee business
expenses of petitioner 4,038
332 -- 0 Schedule A expenses
of petitioner 8,309
10,541 -- 12,744 *525 1984
1985
1986
Wages of
petitioner $ 63,224 $ 67,929 $ 72,439
Interest income
of petitioner and Ms. Oliver --  --  -- Unemployment
compensation of petitioner --  945 -- Schedule C net income of petitioner --  --  -- Schedule C net income
of Ms. Oliver 3,803 5,202 7,675
Short-term capital
gain of petitioner and Ms. Oliver --  --  -- Long-term capital
gain of petitioner and Ms. Oliver --  --  22,079
Net rental income
(loss) of petitioner and Ms. Oliver (6,889)
(5,481)
1,107
Earned retirement
income of petitioner --  124 -- Net employee business
expenses of petitioner 0 0 0
Schedule A expenses
of petitioner 10,527 8,922 5,423
OPINION Introduction
The parties agree that the items of income, expense, and loss to which they stipulated and which we have found as facts do not reflect any community property *526 division which might apply. In her opening brief, respondent sets forth her position, including her contentions as to the applicability of Texas community property law, on the extent to which (1) petitioner's gross income includes those stipulated items of income and (2) petitioner is entitled to deduct those stipulated expenses and losses. In his answering brief, petitioner states: The vast majority of Respondent's brief concentrates on proving the deficiencies and negligence alleged by the Commissioner, arguments which the Petitioner has not challenged. (Tax Court Trial Transcript p. 14, 1. 5-8.) Consequently, in the interest of preserving time and resources, Petitioner will not address those portions of the Respondent's brief. In fact, the Petitioner's acceptance of the deficiency, except the portion due to fraud, is compelling evidence that he never intended to defraud the government and is willing to accept responsibility for his legitimate tax debt. * * *
Thus, petitioner concedes the deficiencies resulting from respondent's position in her opening brief, including her position on the applicability of Texas community property law, with respect to the extent to which *527 (1) petitioner's gross income includes the stipulated amounts of income and (2) petitioner is entitled to deduct the stipulated amounts of expense and loss. Therefore, the only real dispute between the parties is whether petitioner is liable for the additions to tax for fraud for each of the years at issue. [5] We now turn to that issue. Additions to Tax for Fraud
Before considering whether petitioner is liable for the additions to tax for fraud, we address the parties' disagreement over the weight the Court should give to the transcript (the transcript) of petitioner's trial (criminal trial) on two counts of violating section 7203 by willfully failing to file income tax returns for 1980 and 1981. Petitioner was acquitted by a jury. *528 It is respondent's position that the Court has discretion in deciding the weight to afford the testimony given by petitioner and the other witnesses at the criminal trial and that we are not required to accept petitioner's self-serving testimony at that trial. Although not altogether clear, it appears that it is petitioner's position that, by submitting the transcript into evidence and by not calling any witnesses, respondent is attempting to turn this Court into a forum for appellate review of the jury's verdict of acquittal in the criminal trial. We agree with respondent's position. Preliminarily, we note that we are not presented with a situation where we have been asked to decide whether to admit the transcript of the criminal trial into evidence. A copy of the criminal transcript was offered by both parties and received by the Court into evidence as a stipulated exhibit. The only question for us involves the weight to accord the testimony at petitioner's criminal trial. The stipulation of facts states in part the following with respect to stipulated exhibits: The truth of assertions within stipulated exhibits is not necessarily agreed to and may be rebutted or corroborated *529 by additional evidence. * * *
Thus, we are not bound by any testimony at the criminal trial that appears in the transcript. However, it is significant that petitioner's counsel (Michael Louis Minns) at the criminal trial involving charges of willfully failing to file returns for 1980 and 1981 also represented him in the instant proceeding involving additions to tax for fraud for 1980, 1981, and 1983 through 1986. Moreover, the witnesses at the criminal trial, including petitioner, were subjected to rigorous direct and cross-examination. The only factor lost in using testimony from that trial is that we did not have the opportunity to evaluate the credibility of the witnesses from their appearance and demeanor. We do not find any merit in petitioner's contention that, by stipulating into evidence the transcript of the criminal trial and by not calling any witnesses when this case was called for trial, respondent is asking the Court to function as an appellate court that would review petitioner's acquittal of the criminal charges under section 7203. It is the function of this Court to weigh the evidence and to draw inferences from the evidence. Hicks Co. v. Commissioner, 470 F.2d 87, 89 (1st Cir. 1972), *530 affg. 56 T.C. 982 (1971). As the trier of fact, we have discretion in deciding the weight to give the evidence presented, including evidence in the form of prior testimony. See DiMauro v. United States, 706 F.2d 882, 885 (8th Cir. 1983); Hicks Co. v. Commissioner, supra at 92. In determining whether petitioner is liable for the additions to tax for fraud under section 6653(b), we have acted as the finder of fact. In carrying out this function, we have weighed the evidence in the instant record, which includes the stipulated transcript, and not the evidence in the record from petitioner's criminal trial. In this regard, we note that the record in the present case is not the same as the record in petitioner's criminal trial. In addition to the transcript of that trial, the record herein includes a stipulation of facts, a supplemental stipulation of facts, deemed admissions by petitioner, and the January 1991 returns and does not include any of the exhibits which were placed in the record of petitioner's criminal trial. In determining the weight to afford previous testimony, such as the *531 testimony at petitioner's criminal trial, the Court may determine whether portions of that testimony are corroborated by other evidence in the record. Hicks Co. v. Commissioner, 56 T.C. 982, 1027 (1971), affd. 470 F.2d 87 (1st Cir. 1972). It is well settled that we are not required to accept petitioner's self-serving testimony in the absence of corroborating evidence, particularly where that testimony is inconsistent, implausible, or questionable. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Although each of the cited cases applied this rule to testimony given at a trial over which this Court presided, rather than to prior testimony, we see no reason why a different rule should apply in the present case *532 solely because we did not have an opportunity to observe the witnesses at petitioner's criminal trial. Cf. St. Louis Southwestern Ry. Co. v. Henwood, 157 F.2d 337, 342-343 (8th Cir. 1946). As discussed below, petitioner's self-serving testimony at his criminal trial concerning his failure to file returns for the years 1980 and 1981 and his decision to file Forms W-4 claiming to be exempt from withholding during those years is inconsistent, implausible, or questionable and is not corroborated either by testimony from the other witnesses at that trial or by any other evidence in the record of this case. The Court is therefore not required to, and does not, accept that portion of petitioner's testimony. E.g., Nicholas v. Commissioner, supra. However, we have accepted and relied upon other portions of petitioner's testimony which were corroborated either by testimony from the other witnesses at his criminal trial or by other evidence in the record here. [6] *533 We have also accepted and relied upon some of the testimony given by other witnesses at the criminal trial. [7]
Having addressed the parties' disagreement over the weight the Court should give to the criminal transcript, we now turn to the fraud issue. Respondent determined that petitioner is liable for the additions to tax for fraud under section 6653(b) for the years 1980 and 1981, under section 6653(b)(1) and (2) for the years 1983, 1984, and 1985, and under section 6653(b)(1)(A) and (B) for the year 1986. The *534 burden of proving fraud is on respondent, and she must carry that burden by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Petitioner's acquittal of the charges of violating section 7203 by willfully failing to file for 1980 and 1981 does not prevent this Court from finding him liable for the additions to tax for fraud under section 6653(b). See Helvering v. Mitchell, 303 U.S. 391, 397 (1938); Roth v. Commissioner, T.C. Memo. 1992-563. To establish fraud, respondent must prove that (1) an underpayment exists, and (2) petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). Petitioner acknowledges in the stipulation of facts and on brief that there is a deficiency for each year at issue. He therefore concedes that there is an underpayment of tax for each of those years. [8] The only disputed question is whether petitioner had the requisite fraudulent intent. This is a question of fact to be determined upon a consideration of the entire *535 record. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Lessmann v. Commissioner, 327 F.2d 990, 993 (8th Cir. 1964), affg. T.C. Memo. 1962-253; DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed and must be affirmatively established by clear and convincing evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may not be found under circumstances which create at most only suspicion. Toussaint v. Commissioner, supra; Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); *536 Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). However, since direct evidence of fraudulent intent is seldom available, fraud may be proven through circumstantial evidence. Scallen v. Commissioner, 877 F.2d 1364, 1370 (8th Cir. 1989), affg. T.C. Memo. 1987-412; Toussaint v. Commissioner, supra at 312; Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Klassie v. United States, 289 F.2d 96, 101 (8th Cir. 1961); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, supra.
*537 The courts have developed various factors which tend to establish that a taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. Niedringhaus v. Commissioner, 99 T.C. at 211; Parks v. Commissioner, supra at 664. These so-called "badges of fraud" include (1) inconsistent or implausible explanations of behavior; (2) failure to file income tax returns; (3) consistent and substantial understatement of income; (4) filing of false Forms W-4; and (5) failure to make estimated tax payments. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see Day v. Commissioner, 975 F.2d 534, 539 (8th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-140; Scallen v. Commissioner, supra; Webb v. Commissioner, 394 F.2d 366, 379-380 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Bahoric v. Commissioner, 363 F.2d 151, 153-154 (9th Cir. 1966), *538 affg. T.C. Memo. 1963-333; Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Klassie v. United States, supra at 101; Niedringhaus v. Commissioner, supra; Miller v. Commissioner, 94 T.C. 316, 334 (1990); Recklitis v. Commissioner, supra at 910; Castillo v. Commissioner, 84 T.C. 405, 409 (1985). Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Bradford v. Commissioner, supra; Webb v. Commissioner, supra at 380; Beaver v. Commissioner, supra at 93. In addition, the taxpayer's background and the context of the events in question may be considered circumstantial evidence of fraud. Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274; *539 Niedringhaus v. Commissioner, supra.
Having considered the entire record before us, we conclude that petitioner's entire underpayment of tax for each of the years at issue was due to fraud. a. Inconsistent or Implausible Explanations of Behavior
Corroborated testimony at petitioner's criminal trial established that petitioner's and Ms. Oliver's returns were audited for the years 1973, 1974, 1976, 1977, and 1979. Petitioner testified at that trial that Clem Bailey and Associates (Bailey) was his accountant and that Bailey prepared each of the returns filed by petitioner and Ms. Oliver for the years 1972 through 1979. He also indicated at his criminal trial that, because of his concern about being audited so frequently, he decided to obtain additional tax advice. Petitioner testified that he therefore wrote to organizations such as the Universal Life Church and Belanco and consulted with not only Bailey, but also a different accountant, Ollie Paulsen (Paulsen). Petitioner contends on brief that his testimony at the criminal trial establishes that he did not file income tax returns for the years at issue because Ms. Oliver would not return *540 his records and ultimately destroyed those records. Petitioner further alleges on brief that, as a result of Ms. Oliver's alleged destruction of his records, he was forced to concede many issues in this case. Our review of the transcript of the criminal trial discloses that petitioner's position at that trial was that, based on the advice he received from one or both of his accountants, he did not believe he was required to file returns. Petitioner never took the position at his criminal trial that he did not file because of Ms. Oliver's alleged refusal to return his records, and there is nothing in the record to indicate that petitioner did not file for the years at issue because of an inability to obtain records from Ms. Oliver. Instead, petitioner explained at his criminal trial that he did not file returns for the years 1980 and 1981 and that he filed Forms W-4 claiming to be exempt for each of those years because of the advice he received from one or both of his accountants. Petitioner stated at his criminal trial that Paulsen advised him to file a Form W-4E, claiming to be exempt from withholding. He also testified that one of his accountants told him his "tax incentives" *541 [9] were great enough that he would not have to pay any tax until he earned in excess of $ 100,000 per year and that therefore he was not required to file a return provided that he filed a Form W-4 claiming to be exempt from withholding. [10]
*542 On cross-examination at his criminal trial, petitioner testified that he could not recall whether it was Paulsen, Bailey, or both who told him that he was not required to file a return unless his gross income exceeded $ 100,000. Petitioner also admitted on cross-examination that Bailey advised him to keep filing returns. Neither Bailey nor Paulsen testified at petitioner's criminal trial, and there is nothing in the record corroborating petitioner's testimony concerning the advice he allegedly received from Bailey and Paulsen. We find it implausible that petitioner's accountants would have responded to petitioner's concern about the number of times his and Ms. Oliver's returns had been audited by the Service by advising him to cease filing returns and to stop having taxes withheld from his wages. Moreover, we find it hard to believe that one or both of petitioner's accountants informed petitioner that because his "tax incentives" were so great he was not required to pay any tax until he earned in excess of $ 100,000 per year and that he was not required to file a return provided he filed a Form W-4 claiming to be exempt. The parties' stipulations concerning petitioner's and *543 Ms. Oliver's income and expenses for 1980 and 1981 establish that petitioner's "tax incentives" were well below the level required for petitioner to have gross income of $ 100,000 and owe no tax. Furthermore, the determination of whether a taxpayer, like petitioner, is required to file an income tax return depends upon the amount of the taxpayer's gross income, and not the amount of the taxpayer's deductions or credits. See sec. 6012(a). Not only do we find implausible petitioner's testimony at his criminal trial that he did not file returns for the years 1980 and 1981 and that he filed Forms W-4 claiming to be exempt from withholding for each of those years because of the advice he allegedly received from one or both of his accountants, that testimony is belied by other testimony at that trial, including petitioner's own testimony, which was corroborated by several other witnesses, that he told various people between 1979 and 1983 that he did not intend to pay any taxes because he believed taxes were unconstitutional. [11]
*544 Petitioner further undermined the credibility of his own testimony at his criminal trial in other respects. For example, petitioner testified at that trial that he did not know the difference between a Form 1099, a Form W-4, and a Form W-2. However, he contradicted that testimony when he corrected the prosecuting attorney during cross-examination, who referred to a Form W-2 when he intended to refer to a Form W-4. That testimony is also belied by the facts that petitioner testified that he personally prepared the Form W-4 which he filed for 1980 and that he was able to state correctly at the criminal trial the two requirements for filing a Form W-4 claiming to be exempt from withholding. As a final example of the fact that petitioner's testimony at the criminal trial is inconsistent with other portions of the record in this case, we note that petitioner testified at that trial, which took place in August 1987, that he did not owe any taxes at that time. Specifically, on direct examination, his attorney Mr. Minns asked petitioner: "Do you owe any taxes to the United States Government?" Petitioner categorically replied: "No, sir. No, sir, I do not owe them one dime." This testimony *545 is contradicted by the stipulations of the parties that petitioner does owe tax for each of the years at issue as well as by the January 1991 returns which petitioner submitted to the Service and in which he acknowledged that he does owe tax for each of the years 1980 through 1986. Under the foregoing circumstances, the Court is not required to, and does not, accept petitioner's explanation at his criminal trial regarding why he did not file returns for the years 1980 and 1981 and why he filed Forms W-4 claiming to be exempt. E.g., Nicholas v. Commissioner, 70 T.C. at 1064. That explanation of his behavior constitutes evidence of fraud. Bradford v. Commissioner, 796 F.2d at 307; Bahoric v. Commissioner, 363 F.2d at 154; see Baumgardner v. Commissioner, 251 F.2d 311, 322-323 (9th Cir. 1957), affg. T.C. Memo. 1956-112. b. Failure to File
Petitioner is a well-educated individual. He filed a return each year from 1965 through 1979. The Service audited his returns for 1973, 1974, 1976, 1977, and 1979. Petitioner filed petitions *546 in this Court with respect to at least some of those audited years. Petitioner was therefore familiar with his obligation to file Federal income tax returns and with the Federal income tax system. Nonetheless, after 15 years of continuously filing income tax returns, petitioner suddenly chose to stop filing beginning with tax year 1980. Petitioner did not provide the Service with returns for the years at issue (namely, 1980, 1981, 1983, 1984, 1985, and 1986) until well after respondent issued the notices of deficiency for those years and petitioner filed the petition in this case. As is evidenced by the stipulations of the parties and the January 1991 returns that petitioner ultimately did submit to the Service for each of the years at issue, petitioner knew that he received a significant amount of gross income during each of those years and that he had significant taxable income and a tax liability for each such year. As discussed above, we do not accept petitioner's testimony at his criminal trial that he was relying on one or both of his accountants when he decided not to file returns for the years 1980 and 1981. Nor do we accept the allegations in petitioner's brief, which *547 are not supported by the record, that his inability to access his records prevented him from filing returns for the years at issue. Based on the record in this case, we are convinced that petitioner was aware of his obligations under the Federal income tax system, including his responsibility to file returns for each of the years at issue. Nonetheless, he decided to opt out of that system. See Miller v. Commissioner, 94 T.C. at 335. Petitioner's failure to file returns for the six years at issue -- an extended period of time -- is persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d at 885; Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); Castillo v. Commissioner, 94 T.C. at 409. Moreover, when petitioner's failure to file returns for those years is viewed in light of his continuous filing of Federal income tax returns for the years 1965 through 1979, petitioner's inaction weighs heavily against him on the issue of fraudulent intent. Castillo v. Commissioner, supra.
c. Consistent and Substantial Understatement *548 of Income
Petitioner consistently and substantially understated his income for each of the six years at issue. Petitioner does not dispute that he received substantial amounts of income during each of those years from various sources, including wages, interest, unemployment compensation, Schedule C income, capital gains, rent, and retirement pay. Nor does he disagree that he had a significant amount of taxable income for each of those years. Nevertheless, petitioner did not report any of the income he received by filing income tax returns. He did not submit returns to the Service until long after respondent mailed the notices of deficiency and he filed a petition in this case. Petitioner's consistent and substantial understatement of income constitutes strong evidence of fraud, particularly given petitioner's failure to offer a satisfactory explanation as to why he did not report the income he received by filing returns for the years at issue. Webb v. Commissioner, 394 F.2d at 379; Merritt v. Commissioner, 301 F.2d at 487; Lessmann v. Commissioner, 327 F.2d at 993; Klassie v. United States, 289 F.2d at 101; *549 Niedringhaus v. Commissioner, 99 T.C. at 211. d. Filing of False W-4's
Petitioner had tax withheld for each of the years 1965 through 1979. Corroborated testimony from petitioner's criminal trial indicates that, for each of the years 1980 and 1981, petitioner filed a Form W-4 with his employer on which he claimed to be exempt from withholding. The stipulations of the parties and the January 1991 returns for the years at issue acknowledge that petitioner received wage income for each of those years. Those returns also show that no taxes were withheld for not only 1980 and 1981, but also 1983 through 1986. We infer from those returns that petitioner must have also filed Forms W-4 claiming to be exempt for each of those latter years. Petitioner concedes this point in his trial memorandum where he states: For the years 1980, 1981, 1983, 1984, 1985, and 1986, Petitioner filed with his employers Forms W-4 on which he claimed that he was exempt from having income taxes withheld from his wages.
In addition, the parties stipulated: 52. Petitioner filed with his employers Forms W-4 on which he claimed that he was exempt from having income *550 taxes withheld from his wages.
Although the above-quoted stipulation does not state explicitly the years for which petitioner filed Forms W-4 claiming to be exempt, we believe that the stipulation was intended to relate to each of the years at issue. The parties did not submit any of the Forms W-4 filed by petitioner during the years at issue. However, we take judicial notice of the Forms W-4 relating to 1980, 1981, 1983, 1984, 1985, 1986 and related instructions for purposes of evaluating whether petitioner filed false Forms W-4 for those years. Recklitis v. Commissioner, 91 T.C. at 911. The instructions to the Forms W-4 for the years at issue provided that a taxpayer could claim to be exempt from withholding only if (1) for the previous year the taxpayer did not owe any Federal income tax and had a right to a refund of all income tax withheld, and (2) for the present year the taxpayer does not expect to owe any Federal income tax and expects to have a right to a refund of all income tax withheld. Petitioner was aware of these requirements, as is evidenced by his ability to recite them at his criminal trial. Thus, in filing Forms W-4 *551 for the years 1980, 1981, 1983, 1984, 1985, and 1986, petitioner must have certified under penalties of perjury, among other things, that he did not owe any Federal income tax for the years 1979, 1980, 1982, 1983, 1984, and 1985, respectively, and that he had a right to a refund of all income tax withheld for each of those years. However, the parties agree that petitioner did owe tax for each of the years 1980, 1983, 1984, and 1985. Although the year 1982 is not at issue, the parties stipulated that petitioner had gross income for that year, and the January 1991 return he submitted for 1982 acknowledged that he had a tax liability for that year. Thus, the Forms W-4 filed by petitioner for each of the years 1981, 1983, 1984, 1985, and 1986 were false because, in order to claim that he was exempt, petitioner was required to certify on each of those forms that he did not owe any income tax for the prior year. [12] See Recklitis v. Commissioner, supra at 912. *552 In addition, the Forms W-4 filed by petitioner for each of those years at issue (namely, 1981 and 1983 through 1986), as well as for tax year 1980, were false because, in order to claim that he was exempt, petitioner also was required to certify on each of those forms that he did not expect to owe any income tax for each of those years and that he expected to receive a refund of all income tax withheld for each such year. Yet, the parties agree that petitioner had significant amounts of gross income and taxable income and that he had an income tax liability for each of those years. In addition, the January 1991 returns that petitioner submitted to the Service for each of the years at issue show significant amounts of gross income and taxable income and an income tax liability for each of those years. It is also significant that petitioner started filing Forms W-4 claiming to be exempt at about the time he started telling various people that taxes were unconstitutional and that he therefore did not intend to pay any taxes. Under the foregoing facts and circumstances, we conclude that petitioner filed false Forms W-4 for each year at issue. [13]This constitutes additional evidence *553 of fraud. Miller v. Commissioner, 94 T.C. at 334; Stringer v. Commissioner, 84 T.C. 693, 714-715 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Castillo v. Commissioner, 84 T.C. at 410; Rowlee v. Commissioner, 80 T.C. at 1125. *554 e. Failure to Pay Estimated Tax
The stipulations as to petitioner's income and the January 1991 returns he filed for the years at issue establish that petitioner had significant amounts of gross income from wages and other sources for each of those years, as well as significant amounts of taxable income for each such year. Nevertheless, not only did petitioner not have any income taxes withheld from his wages, he did not make any estimated tax payments during any of the years at issue. Petitioner's failure to make estimated tax payments during the years at issue provides additional evidence of fraud. Bradford v. Commissioner, 796 F.2d at 308; Niedringhaus v. Commissioner, 99 T.C. at 213. f. Additional Considerations
Petitioner had at least three years of college education, worked as an engineer, and managed various rental homes during the years at issue. Moreover, at about the time petitioner stopped filing returns and began filing false Forms W-4, he was asserting that he did not intend to pay any taxes because taxes were unconstitutional. [14] When viewed in light of these facts, petitioner's entire course *555 of conduct evidences that the underpayment of tax for each of the years at issue was the result of petitioner's fraudulent intent. Scallen v. Commissioner, 877 F.2d at 1370; Niedringhaus v. Commissioner, supra at 211; Miller v. Commissioner, supra at 334; Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986); Castillo v. Commissioner, supra at 409-410. g. The Parties' Positions Regarding Roth v. Commissioner
Because of the strong and divergent views of the parties as to the similarity, if any, of Roth v. Commissioner, T.C. Memo. 1992-563, to this case, we shall conclude our discussion of the fraud issue with some comments *556 on that decision. Respondent vigorously argues that the instant case is similar to the Roth case and that Roth supports a finding of fraud here. With equal vigor, petitioner contends that Roth is "in no way similar" to the present case. We agree with respondent. In Roth, the taxpayer-husband (Mr. Roth) and the taxpayer-wife were both found liable for additions to tax for fraud. Mr. Roth did not submit an income tax return for any of the years at issue until after a criminal investigation was commenced. Here, petitioner did not submit tax returns for the years at issue until almost three and a half years after his criminal trial, about one year and three months after the notices of deficiency for the years at issue were mailed, and about one year after he filed a petition herein. In Roth and here, Mr. Roth and petitioner had wages, interest income, self-employment income, rental income, and capital gains, and yet each failed to file returns and each filed Forms W-4 claiming to be exempt from withholding for the respective years at issue. In Roth, we refused to accept Mr. Roth's testimony that, based on his belief in certain tax protester arguments, he *557 did not think he owed tax for the years at issue. Here, we have refused to accept petitioner's testimony at his criminal trial that he did not file returns because of the advice he allegedly received from one or both of his accountants. Mr. Roth, like petitioner, had previously been tried and acquitted of charges for willful failure to file a return under section 7203. [15]
Despite the similarities between Roth and the present case, petitioner attempts in his brief to distinguish the Roth case on the ground that, in Roth, we actually heard the testimony of the taxpayer there involved, which we did not accept, whereas here we are relying on the transcript of petitioner's criminal trial in deciding whether or not to accept his testimony. As discussed above, we are not required to accept petitioner's uncorroborated, implausible, and contradicted testimony at his criminal trial simply because we did not hear that testimony *558 first hand. See Nicholas v. Commissioner, 70 T.C. at 1064; cf. St. Louis Southwestern Ry. Co. v. Henwood, 157 F.2d at 343. Petitioner also claims that he, unlike Mr. Roth, never asserted a belief that he was not required to file returns based on tax protester-type arguments. Petitioner's claim is belied by his admission at the criminal trial that he told various people that he did not intend to pay any taxes because taxes were unconstitutional. Petitioner further attempts to distinguish Roth v. Commissioner, supra, by asserting that an additional reason he did not file returns for the years at issue was because Ms. Oliver destroyed all his tax records. However, as noted previously, there is no evidence in the record establishing that petitioner did not file returns because of an inability to access his tax records. The record is also devoid of evidence suggesting that Ms. Oliver destroyed petitioner's tax records. When asked about his records at the criminal trial, petitioner testified: "My ex-wife or the IRS probably has them." h. Conclusion
Based on the entire record, we *559 hold that respondent has clearly and convincingly established that petitioner's entire understatement of tax for each of the years 1980, 1981, and 1983 through 1986 was due to fraud. Accordingly, petitioner is liable for the additions to tax for fraud under section 6653(b) for the years 1980 and 1981, under section 6653(b)(1) and (2) for the years 1983 through 1985, and under section 6653(b)(1)(A) and (B) for the year 1986. Additions to Tax for Failure to Pay Estimated Tax
Respondent determined that petitioner is liable for the addition to tax under section 6654(a) for underpayment of estimated tax for each of the years at issue. Where prepayments of tax, either through withholding or by making estimated tax payments quarterly during the course of the year, do not equal the percentage of total liability required under the statute to be paid as estimated tax, imposition of the addition is mandatory, unless the taxpayer shows that one of the several statutory exceptions applies. Sec. 6654; Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner made no argument on brief as to why he falls within one of the statutory exceptions for any *560 of the years at issue. Petitioner has not sustained his burden of showing that respondent's determination that petitioner is liable for the addition to tax under section 6654 for each of those years is incorrect. Accordingly, respondent's determination will be sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. When this case was called for trial, respondent informed the Court that the principal issue remaining for decision is whether petitioner is liable for the additions to tax for fraud. Respondent chose not to present any witnesses on that issue and decided instead to rely on the stipulations of facts. In response, petitioner took the position that the stipulations were insufficient to establish fraud and moved for summary judgment. Respondent then cross-moved for summary judgment. It is clear from the record and the parties' briefs that, although the parties moved for what they referred to as summary judgment, they intended to submit this case on the basis of the stipulations. Accordingly, the Court will treat petitioner's motion for summary judgment and respondent's cross-motion for summary judgment as merely reflecting the parties' intention to submit this case on the stipulations. ↩
2. All section references are to the Internal Revenue Code as in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to fraud. Respondent determined that the entire underpayment for each of the years at issue was due to fraud.↩
3. In light of our holding relating to the additions to tax for fraud, we do not address respondent's alternative contentions relating to the additions to tax for negligence and for failure to file.↩
4. The parties' stipulations of these items do not take account of any community property division which might be applicable.↩
5. Petitioner does not address on brief the additions to tax for failure to pay estimated tax that were determined by respondent. Thus, it appears that petitioner concedes this issue as well. Nonetheless, we shall briefly address it below after our discussion of the fraud issue.↩
6. Specifically, we have accepted and relied upon petitioner's testimony that he told various people that he was not going to pay any taxes because they were unconstitutional. We have also accepted and relied upon petitioner's testimony that he owned and managed rental homes during the years at issue.↩
7. Most of the testimony from witnesses other than petitioner upon which we have relied was corroborated either by testimony from other witnesses at the criminal trial or by other evidence in the record of this case. The only such testimony which is not corroborated by any other evidence was offered by an agent of the Service who testified regarding the returns filed by petitioner and Ms. Oliver for the years 1965 through 1979. The agent described, among other things, the amount of tax shown as due and owing on each of those returns and the amount of tax that had been withheld for each of those years. At the criminal trial, petitioner did not dispute the agent's testimony as to these matters.↩
8. In this case, the underpayment for each year at issue is the amount of the deficiency for each of those years. Sec. 6653(c)(1)↩.
9. While not totally clear, it appears, and we assume, that the "tax incentives" about which petitioner testified at his criminal trial are deductions and/or credits that would reduce his income tax liability.↩
10. Petitioner further testified at his criminal trial that he also relied on the Federal Register and materials which he received from Belanco and the Universal Life Church in not filing returns. Petitioner explained that the Federal Register and materials provided by Belanco and the Universal Life Church indicate that filing a Form W-4 claiming to be exempt can substitute for filing a Federal income tax return. Petitioner's counsel represented at the criminal trial that the Federal Register to which petitioner referred in his testimony was the 1946 Federal Register. Assuming arguendo that the 1946 Federal Register does provide that a Form W-4 can substitute for a Federal income tax return, it was clearly the law for each of the years at issue that petitioner was required to file a Federal income tax return assuming he had a minimum amount of gross income, which he did, regardless whether he filed a Form W-4 claiming to be exempt. Sec. 6012(a).↩
11. One of the witnesses who corroborated petitioner's admission was a special agent with the Service's Criminal Investigation Division who testified that petitioner told him that he did not file returns for the years 1980 and 1981 because taxes were unconstitutional and because of the harassment he had received from the Service.↩
12. We cannot conclude on this record whether or not petitioner owed tax for the year 1979. However, respondent's failure of proof on this point is not dispositive of the issue of fraud for 1980. On the contrary, other indicia of fraud are present for 1980 and establish fraud for that year.↩
13. Our conclusion is further supported by paragraph 29 of respondent's request for admissions which provides: 29. Petitioner George Joseph Oliver filed with his employers false Forms W-4 on which he claimed that he was exempt from having income taxes withheld from his wages.
The above-quoted admission was deemed conclusively established when petitioner failed to respond timely to respondent's request for admissions. Rule 90(c), (f). Petitioner appears to take the position on brief that paragraph 29 of respondent's request for admissions (the deemed admission) was superseded by paragraph 52 of the stipulation of facts. We disagree with petitioner's position. The only difference between the deemed admission and paragraph 52 of the stipulation is that the stipulation omits the word false. While the stipulation does not contain the word false, it does not contradict the deemed admission. Rather, the stipulation is simply silent as to whether the Forms W-4 filed by petitioner were false. We also note that nothing in the stipulation of facts states that it was intended by the parties to supersede the deemed admissions. Accordingly, we conclude that paragraph 52 of the stipulation of facts did not supersede the deemed admission and that the deemed admission is conclusively established for purposes of this case under Rule 90(f).↩
14. We note that even a sincere belief that Federal income tax laws are unconstitutional is not a defense to fraud. Niedringhaus v. Commissioner, 99 T.C. 202, 217↩ (1992).
15. Mr. Roth was also tried and acquitted of criminal tax evasion under sec. 7201.↩